Theodore V. H. Mayer (TM 9748)
Vilia B. Hayes (VH 4601)
Robb W. Patryk (RP 0161)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Attorneys for Defendant Merck & Co., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

JUNE TAUBER GOLDEN, LUCY TAUBER
BRYSK and ERIC LAX as Administrators of the
ESTATE OF PETER AARON LEE TAUBER,
Deceased,

                               Plaintiffs,

              -against-

LOREN MARTIN FISHMAN, M.D.,
MANHATTAN PHYSICAL MEDICINE AND
REHABILITATION LLP and MERCK & CO.,
INC.,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - x

No.: _____ CV _____ 6958

**05   CV   6958**

**NOTICE OF REMOVAL OF
DEFENDANT MERCK & CO.,
INC.**

PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this

action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Supreme Court of the State of

New York, County of New York to the United States District Court for the Southern District of

New York and respectfully states to this Court the following:

        1.      This action involves allegations regarding the prescription drug VIOXX®.  On

February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148

VIOXX® products liability cases to the United States District Court for the Eastern District of

Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.  Merck

intends to seek the transfer of this action to that Multidistrict Litigation, *In re VIOXX Products*

*Liability Litigation,* MDL No. 1657, and will shortly provide to the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

2.     Plaintiffs June Tauber Golden, Lucy Tauber Brysk and Eric Lax ("Plaintiffs") filed this civil action against Merck in the Supreme Court of the State of New York, County of New York, bearing Index Number 109608/05.  Plaintiffs seek damages for "pain and suffering for a lengthy period of time, and sustained anxiety and fear of additional adverse medical consequences" that they allege were caused by Peter Aaron Lee Tauber's, their decedent's, use of the prescription medicine VIOXX®.  (Complaint ¶ 23.) Plaintiffs' claims are based on theories of negligence and gross negligence, strict liability, misrepresentation and failure to warn, breach of express and implied warranties, violation of New York Business Corporation Law §349, and wrongful death.

3.     As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Merck has (1) satisfied the procedural requirements for removal and (2) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I.  MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.     Merck was served with a copy of Plaintiffs' Complaint ("Compl.") on July 18, 2005.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).  A true and correct copy of the Summons and Complaint is attached hereto as Exhibit 1.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 89(c) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

6.      Defendants who have not been served and/or who are fraudulently joined need not consent to removal.[1]

7.      No previous application has been made for the relief requested herein.

8.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Court for the Supreme Court of the State of New York, New York County.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.      Complete Diversity Of Citizenship

10.     There is complete diversity between Plaintiffs, citizens of New York and California, and Merck, a citizen of New Jersey, the only properly joined parties to this action.

11.     Upon information and belief, Plaintiffs are citizens of the States of New York and California.[2]

---

1.      28 U.S.C. § 1441(b) does not bar removal. It is well-settled that co-defendants who are fraudulently joined and/or have not been served need not join in the removal. *See Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993); *Durove v. Fabian Transp. Inc.*, No. 04 Civ. 7000 (RJH), 2004 U.S. Dist. LEXIS 25258, *3 n. 5 (S.D.N.Y. Dec. 14, 2004). Loren Martin Fishman, M.D. and Manhattan Physical Medicine and Rehabilitation LLP have been fraudulently joined and, therefore, do not need to consent to removal.

2.      Plaintiffs allege that they are residents of New York and California. (Compl. ¶¶ 2-4.) Plaintiffs allege no other alternative states of residence. Accordingly, New York and California are the states in which Plaintiffs are

12.     Merck is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

13.     For the reasons set forth below, the other named defendants – Loren Martin Fishman, M.D. ("Dr. Fishman") and Manhattan Physical Medicine and Rehabilitation LLP ("Manhattan Physical") – are fraudulently joined.  Therefore, their citizenship must be ignored for the purpose of determining the propriety of removal.  *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds*.  A defendant is fraudulently joined when "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).  Courts have interpreted this language to mean that a "reasonable basis" must exist for a plaintiff's claim against a non-diverse party.  *In Re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 n. 4 (S.D.N.Y. 2001).  Dr. Fishman and Manhattan Physical are fraudulently joined because, as demonstrated below, no reasonable basis exists for Plaintiffs' claims against them.

14.     First, Dr. Fishman and Manhattan Physical are fraudulently joined because all the allegations against them are wholly conclusory.  Because Plaintiffs have not alleged a sufficient factual basis for their claims, there is no reasonable basis to predict that plaintiffs could prevail on any claim against Dr. Fishman or Manhattan Physical.  The Complaint alleges the following

---

domiciled and, therefore, the states of which they are citizens. *See* 28 U.S.C. § 1332(a); *see also Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) ("[f]or purposes of diversity jurisdiction, a party's citizenship depends on his domicile.").

general facts concerning Dr. Fishman: that he is a "physician licensed to practice medicine in the

State of New York," that he held himself out as "a specialist in the field of rehabilitation," and as

"capable of diagnosing, treating and caring for such medical and physical conditions for which

he would undertake to treat," that he "practiced his profession at the MANHATTAN

PHYSICAL MEDICINE AND REHABILITATION LLP," and that Peter Aaron Lee Tauber

engaged his services "in connection with certain medical care, management and treatment to be

rendered to said plaintiff...." (Compl. ¶¶ 6-10.)  With respect to Manhattan Physical, the

Complaint alleges that it is a "limited partnership," that it "held itself out as a facility supplying

medical care, physical therapy and treatment," and that it "did undertake the treatment of

plaintiffs' decedent, PETER AARON LEE TAUBER, and providing [sic] Him with medical

care, management, treatment, and attention, and accepted the PETER AARON LEE TAUBER

medically as a patient." (Compl. ¶¶ 11-12, 14-15.)  The only specific fact alleged in the

Complaint as to these defendants is that Dr. Fishman and Manhattan Physical "distributed

VIOXX® [to] plaintiff PETER AARON LEE TAUBER while he was under their care" and that

"from approximately June 2001 until on or about February 2004, defendants LOREN MARTIN

FISHMAN, .M.D AND MANHATTAN PHYSICAL MEDICINE AND REHABILITATION,

LLP., prescribed VIOXX® to PETER AARON LEE TAUBER." (Compl. ¶¶ 16, 20.)  Other

than the general allegations in the introductory portion of the complaint, the remainder of the

complaint contains allegations against "defendants" or "manufacturing defendants."  In the

absence of specific factual allegations concerning the actions of Dr. Fishman and Manhattan

Physical, there is no basis for a claim against them and they are fraudulently joined in this action.

*In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 00 Civ. 2843 (LAK), 2002 WL 31852826, *2

(S.D.N.Y. Dec. 18, 2002) ("an entirely conclusory allegation…is insufficient" to defeat

fraudulent joinder); *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir. 1999) (in-state

defendant fraudulently joined where plaintiff fails to allege a factual basis for claims against it);

*Strong v. First Family Fin. Servs., Inc.,* 202 F. Supp. 2d 536, 545 (S.D. Miss. 2002) (denying

remand; non-diverse defendant was fraudulently joined where plaintiff asserted mere

"conclusory" allegations, "unaccompanied by any factual allegation"); *Howard v. CitiFinancial,*

*Inc.,* 195 F. Supp. 2d 811, 818 (S.D. Miss. 2002) (denying remand on the grounds that

"conclusory or generic allegation of wrongdoing on the part of non-diverse defendant are not

sufficient to show that the defendant was not fraudulently joined").

15.     Rather than stating claims against Dr. Fishman and Manhattan Physical, the five

main claims asserted in the Complaint all appear to be product liability claims against Merck –

similar to the claims asserted against Merck in the VIOXX® product liability cases that are now

part of the Multidistrict Litigation.  The claims of negligence and gross negligence, strict

liability, misrepresentation and failure to warn, breach of warranty, violation of the New York

Business Corporation Law §349, and wrongful death all appear to be based on allegations

relating to the manufacture, sale and distribution of an allegedly defective product.  Although

Merck denies these allegations, it is clear from the Complaint that only Merck is alleged to have

engaged in these activities in connection with the sale of VIOXX®.  Thus, although four of these

claims are asserted against "defendants" while the breach of warranty claim is asserted against

the "manufacturing defendants", Plaintiffs do not allege any specific action by Dr. Fishman or

Manhattan Physical.  In fact, it is evident from the context that although the claims refer to

"defendants," the allegations of manufacture, sale, advertising etc. cannot be referring to Dr.

Fishman or Manhattan Physical and cannot defeat fraudulent joinder. *See Louis v. Wyeth-Ayerst Pharms., Inc.,* No 5:00CV102LN, at 3 n.2 (S.D. Miss. Sept. 25, 2000) (attached hereto as Exhibit 2); *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 391-93 (5th Cir. 2000). Since these defendants are not mentioned in the Complaint other than the introductory paragraphs, Plaintiffs have failed to state any legally cognizable claim against them. *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272, 295 (S.D.N.Y 2001).

16.    Second, to the extent Plaintiffs' allegations against Dr. Fishman and Manhattan Physical are based on a negligent dispensing theory, there is no reasonable basis that Plaintiffs will prevail on those claims because they directly contradict the gravamen of the Complaint – that Merck hid the alleged dangers of VIOXX® from everyone, including the medical community. Plaintiffs allege in general terms that "defendants knew or should have known that a significant portion of the users of the product would be subject to a significant risk and increased risk of serious side effects..." (Compl. ¶ 37.) To the extent the court could construe these allegations as alleging knowledge on the part of Dr. Fishman or Manhattan Physical, the allegations are contradicted by the allegations that Merck failed to "to warn the medical profession . . . about the serious and deadly side effects of its product" (Compl. ¶ 39), and that Merck "deceived the medical community and public at large including all potential users." (Compl. ¶ 58.) In similar cases, other courts have found these allegations are insufficient to support a negligence claim and concluded the physician was fraudulently joined. *See, e.g., Baisden v. Bayer Corp.,* 275 F. Supp. 2d 759, 763 (S.D. W. Va. 2003) (physician fraudulently joined where "gravamen of the malpractice case against [physician] is his failure to know what allegedly was deliberately hidden" by drug manufacturer); *In re Rezulin Prods. Liab. Litig.,* No.

00 Civ. 2843, 2002 WL 31852826, *2 (S.D.N.Y. Dec. 18, 2002) (non-diverse physician defendant fraudulently joined; finding conclusory allegations that physicians failed to warn of drug's risks were insufficient where "main tenor of plaintiffs' complaint is that [drug] was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (in-state physician fraudulently joined when minimal conclusory allegations of the physician's knowledge were contradicted by specific allegations that the pharmaceutical manufacturer concealed and/or misrepresented information).

17.     Other courts have reached the same result when faced with similar conflicting claims against Merck and non-diverse physicians or defendants in the VIOXX® litigation. *See, e.g., Flores v. Merck & Co., Inc.*, No. C-03-362, slip op. at 2 (S.D. Tex. Mar. 15, 2004) (attached hereto as Exhibit 3) (finding doctor fraudulently joined where allegations against the doctor were conclusory and where plaintiffs "claim[ed] that Merck 'failed to adequately inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion"); *Omobude v. Merck & Co., Inc.*, No. 3:03CV528LN, slip op. at 4 (S.D. Miss. Oct. 3, 2003) (attached hereto as Exhibit 4) (physician fraudulently joined where plaintiff alleged that "Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff conclude[d] that [physician] 'knew or should have known' the truth about Vioxx").

18.     Third, to the extent that Plaintiffs' allegations against Dr. Fishman and Manhattan Physical are based on something other than the mere prescription of VIOXX®, Dr. Fishman and

Manhattan Physical are fraudulently joined because Plaintiffs' allegations against them are misjoined with the product liability claims against Merck, and should be severed. Such other claims would not "arise out of the same transaction or occurrence" and should be severed. *See, e.g., In re Rezulin Prods. Liab. Litig.,* MDL No., 1348, 00 Civ. 2843, 2003 WL 21276425 (S.D.N.Y. June 2, 2003) (adopting Report and Recommendation dated April 29, 2003) (holding that only the malpractice claims (based on failure to monitor) against the in-state physician defendant should be remanded and the court should retain jurisdiction over the product liability claims asserted against the diverse out-of-state manufacturer); *see also Lee v. Mann,* 2000 WL 724046, at *2 (Va. Cir. Ct. April 5, 2000) (claims against pharmaceutical manufacturer and physician "do not arise out of the 'same transaction or occurrence'"; granting motion for severance).

## B.     The Amount In Controversy Requirement Is Satisfied.

19.     It is apparent from the face of the Complaint that Plaintiffs seek recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiffs seek compensatory and exemplary damages for alleged "pain and suffering for a lengthy period of time, and sustained anxiety and fear of additional adverse medical consequences" that Plaintiffs allege were caused by their decedent's use of the pharmaceutical VIOXX®, which was manufactured by Merck. (Compl. ¶ 23.) The foregoing makes it apparent that the amount in controversy for Plaintiffs is well in excess of $75,000. *See, e.g., James v. Gardner*, No. 04 Civ. 1380, 2004 U.S. Dist. LEXIS 23174, *10 (E.D.N.Y. Nov. 10, 2004) (where plaintiff fails to represent a definitive amount in controversy, the court may look to defendant's petition for removal for a showing of reasonable probability that plaintiff's claim for damages exceeds the jurisdictional amount).

20.     Federal courts confronted by similar complaints in which plaintiffs alleged that they suffered similar injuries as a result of their use of VIOXX® found that they have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and, either explicitly or implicitly, concluded that the amount in controversy exceeded $75,000. *See, e.g., Porter v. Merck & Co., Inc.*, No. 4:03CV12LN, Memorandum Opinion and Order at 2 (S.D. Miss. June 17, 2003)(attached hereto as Exhibit 5); *Zeedyk v. Merck & Co., Inc.*, No. 02C4203, Order at 2 (N.D. Ill. August 30, 2002)(attached hereto as Exhibit 6).

WHEREFORE, Defendant Merck respectfully removes this action from the Supreme Court of the State of New York, County of Richmond, pursuant to 28 U.S.C. § 1441.

DATED:        New York, New York
              August 4, 2005

                                          Respectfully submitted,

                                          HUGHES HUBBARD & REED LLP


                                          By: _Vilia B. Hayes_
                                              Theodore V. H. Mayer (TM 9748)
                                              Vilia B. Hayes (VH 4601)
                                              Robb W. Patryk (RP 0161)

                                          One Battery Park Plaza
                                          New York, New York  10004-1482
                                          (212) 837-6000

                                          *Attorneys for Defendant Merck & Co., Inc.*

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
JUNE TAUBER GOLDEN, LUCY TAUBER BRYSK
and ERIC LAX as Administrators of the Estate of
PETER AARON LEE TAUBER, deceased.

                        Plaintiffs,

          - against -

LOREN MARTIN FISHMAN, M.D., MANHATTAN
PHYSICAL MEDICINE AND REHABILITATION L.P.
and MERCK & CO., INC.,

                Defendants.
-----------------------------------------------------------------X

<u>COMPLAINT</u>

Index No.
Date Filed:

**FILED**

JUL 12 2005

NEW YORK
COUNTY CLERKS OFFC.

05109668

Plaintiffs, by and through counsel, the Law Office of GODOSKY & GENTILE, P.C.,

alleges upon information and belief as follows:

1.    That the amount of damages sought herein exceeds the jurisdictional limits of all

        lower Courts, which would otherwise have jurisdiction exclusive of interest and costs.

2.    That plaintiff June Tauber Golden was and is at all times relevant herein a resident of

        New York, residing at 165 East 66th Street, New York, New York.

3.    That plaintiff Lucy Tauber Brysk was and is at all times relevant herein a resident of

        California, residing at 360 Lake Street, San Francisco, CA 94118.

4.    That plaintiff Eric Lax was and is at all times relevant herein a resident of California,

        residing at 609 Treanton, Beverly Hills, CA 90210.

5.    That the plaintiffs were appointed Administrators of the Estate of PETER AARON

        LEE TAUBER on the 17th day of December 2004 by Honorable Surrogate Renee R.

        Roth of New York County. Said plaintiffs are duly qualified to act and are acting as

such Administrators.

6.  That at all times mentioned herein, defendant LOREN MARTIN FISHMAN, M.D.
    was a physician licensed to practice medicine in the State of New York.

7.  That at all times mentioned herein, defendant LOREN MARTIN FISHMAN, M.D.
    held himself out as a specialist in the field of rehabilitation.

8.  That all times mentioned herein, defendant LOREN MARTIN FISHMAN, M.D, held
    himself out to be a physician, possessing the skill and ability of members of the
    medical profession and represented that he was capable of diagnosing, treating and
    caring for such medical and physical conditions for which he would undertake to
    treat.

9.  That at all times mentioned herein, the defendant LOREN MARTIN FISHMAN,
    M.D. practiced his profession at the MANHATTAN PHYSICAL MEDICINE AND
    REHABILITATION LLP located at 3 East 83rd Street, in the County of New York,
    State of New York.

10. That at all times mentioned herein, the plaintiffs' decedent PETER AARON LEE
    TAUBER engaged the services of the defendant LOREN MARTIN FISHMAN, M.D.
    in connection with certain medical care, management and treatment to be rendered to
    the said plaintiff by the said defendant.

11. That all times mentioned herein, defendant MANHATTAN PHYSICAL MEDICINE
    AND REHABILTATION LLP was a limited partnership, organized and existing
    under and by virtue of the laws of the State of New York.

12. That at all times mentioned herein, defendant MANHATTAN PHYSICAL

4

MEDICINE AND REHABILITATION LLP by its agents, servants and/or employees, held itself out as a facility supplying medical care, physical therapy and treatment to members of the general public at its facility located at 3 East 83rd Street, New York, New York.

13. That at all times hereinafter mentioned the defendant MANHATTAN PHYSICAL MEDICINE AND REHABILITATION LLP by its agents, servants and/or employees operated, controlled and maintained the aforesaid facility.

14. That at all times mentioned herein, the defendant MANHATTAN PHYSICAL MEDICINE AND REHABILITATION LLP by its agents, servants and/or employees, did undertake the treatment of plaintiffs' decedent, PETER AARON LEE TAUBER, and providing Him with medical care, management, treatment, and attention, and accepted PETER AARON LEE TAUBER medically as a patient.

15. That all times mentioned herein, upon information and belief, plaintiffs' decedent, PETER AARON LEE TAUBER, came under the care of defendants LOREN MARTIN FISHMAN, M.D. and MANHATTAN PHYSICAL MEDICINE AND REHABILITATION LLP.

16. That all times mentioned herein, upon information and belief, defendants LOREN MARTIN FISHMAN, M.D. and MANHATTAN PHYSICAL MEDICINE AND REHABILITATION LLP distributed VIOXX® plaintiff PETER AARON LEE TAUBER while he was under their care.

17. Upon information and belief at all times mentioned herein, defendant MERCK & CO. INC. is a foreign corporation by virtue of being incorporated in New Jersey, and has

5

its principal place of business at One Merck Drive, P.O. Box 100, WS3AB-05

Whitehouse Station, New Jersey 08889-0100, and is authorized to do business in the

State of New York, registered in or with its principal office located in Onondaga

County.

18.   At all times herein mentioned, defendant MERCK & CO. was engaged in the design,

manufacture, production, testing, study, research, inspection, mixture, labeling,

marketing, advertising, sales, promotion and/or distribution of pharmaceutical

products, including the arthritis and acute pain medication VIOXX® for ultimate sale

and/or use in the United States of America as well as in countries throughout the

world.

19.   The defendants are liable for the acts and transactions complained of herein that

occurred and injured plaintiff in and thus had consequences in the State of New York.

20.   That from approximately June 2001 until on or about February 2004, defendants

LOREN MARTIN FISHMAN, M.D. and MANHATTAN PHYSICAL MEDICINE

AND REHABILITATION, LLP., prescribed VIOXX® to PETER AARON LEE

TAUBER.

21.   That from approximately June 2001 until on or about February 2004, PETER

AARON LEE TAUBER ingested VIOXX® as prescribed.

22.   As a direct and proximate result of the conduct of the defendants, PETER AARON

LEE TAUBER sustained severe injuries.

23.   By reason of the foregoing, the injured plaintiff sustained pain and suffering for a

lengthy period of time, and sustained anxiety and fear of additional adverse medical

6

consequences.

24.   By reason of his injuries, the plaintiffs incurred or may be obligated to pay monies for
medical expenses.

25.   The injuries by PETER AARON LEE TAUBER as aforesaid were caused solely by
the defendants' defective product without and fault on the part of PETER AARON
LEE TAUBER contributing hereto.

26.   Upon information and belief, the defendants used a wide range of marketing methods
to promote the aforesaid products including, but not limited to, sponsoring medical
journals to promote the alleged benefits of its products, using sales representatives to
call to on physicians throughout the country to encourage them to prescribe
defendants' products, sponsoring continued medical education programs for the
express purpose of promoting its products, hiring experts in the field to speak to
physicians for purposes of promoting their products, by direct advertisements to
consumers and end-users of their product, and by utilizing the media to promote the
alleged benefits of their products.

27.   Upon information and belief, defendants engaged in extensive advertising and
promotional activity which indicated its drug was efficacious for treating and that it
was safe to use, and published a description thereof in the Physician's Desk Reference
for use by doctors in determining whether to prescribe said drug to patients, including
plaintiffs' decedent.

28.   Upon information and belief, based on defendant's promotional activity with respect
to the aforesaid product, PETER AARON LEE TAUBER was prescribed the drug

7

based on the belief the same was safe to use and was unlikely to subject him to
serious side effects as a result of use of the product.

29.     In reliance on the same, PETER AARON LEE TAUBER ingested said drug and
continued ingesting the drugs from approximately June 2001 until on or about
February, 2004 as instructed by his prescribing physician.

30.     At all times herein mentioned, the defendants knew their product did not have
scientifically proven benefits and that the risks included cardiovascular events
including, but not limited to, heart attack, stroke, and death, which is known by either
to medical community or end users would have resulted in consumers including the
plaintiffs' decedent using alternative medications.

31.     Upon information and belief, had the defendants carried out proper testing on their
product, they would have realized that the risks of using their products included
cardiovascular events including, but not limited to, heart attack, stroke, and death and
that the risks far outweighed any alleged benefits from their products.

32.     Plaintiffs allege that the limitations on liability set forth in CPLR §1601 do not apply
under the exemptions set forth in CPLR §§1602(5), 1602(7) and 1602(11).

33.     That by reason of the foregoing, plaintiffs have been damaged in an amount which
exceeds the monetary jurisdictional limits of any and all lower Courts which would
otherwise have jurisdiction herein, in an amount to be determined upon the trial of
this action.

## AS AND FOR A FIRST CAUSE OF ACTION
## NEGLIGENCE AND GROSS NEGLIGENCE

34.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in

8

paragraphs numbered "1" through "33" inclusive, with the same force and effect as though more fully set forth.

35. At all times herein mentioned, each defendant, itself or by use of others, did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, and otherwise distribute in interstate commerce said product.

36. The defendants knew or should have known with the exercise of reasonable care that the product is an unreasonably dangerous product and nevertheless manufactured and placed said product into the stream of commerce.

37. Prior to the time the plaintiff ingested the product, the defendants knew or should have known that a significant portion of the users of the product would be subject to a significant risk and increased risk of serious side effects including cardiovascular disease, stroke and death.

38. Upon information and belief, the defendants' manufacturers failed to carry out adequate investigation including, but not limited to, failing to adequately test the product.

39. Each defendant was further grossly negligent and evinced a reckless disregard for the safety of persons who would be using said product by downplaying, minimizing, and otherwise failing to warn the medical profession, the public in general and the plaintiff in particular about the serious and deadly side effects of its product, while at the same time promoting the drug on the basis of minor alleged benefits and unsubstantiated or false claims as to efficacy for pain management.

40. As a direct and proximate result of the negligence of the defendants, PETER AARON

9

LEE TAUBER was harmed, sustaining personal injuries due to ingesting said product over a period of time.

41.    By reason of the foregoing, PETER AARON LEE TAUBER sustained pain and suffering for a lengthy period of time, and sustained anxiety and fear of additional adverse medical consequences.

42.    Upon information and belief, as a result of the conduct of the defendants, PETER AARON LEE TAUBER sustained injuries as a result of complications and causes stemming from the ingestion of the aforesaid products.

43.    By reason of PETER AARON LEE TAUBER's injuries, plaintiffs have incurred or may be obligated to pay monies for medical expenses.

44.    The injuries plaintiff sustained as aforesaid and the damage resulting therefrom were caused solely by the defendants' defective products without any fault on the part of plaintiffs contributing thereto.

45.    As a result of the foregoing, plaintiffs are entitled to compensatory damages from defendants and are entitled to exemplary damages in an amount that exceeds jurisdictional limits of any and all lower courts.

## AS AND FOR A SECOND CAUSE OF ACTION
### (STRICT LIABILITY)

46.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs numbered "1" through "45" inclusive, with the same force and effect as though more fully set forth.

47.    At all times herein mentioned, said product was dangerous and defective, in that any benefit from said product was outweighed by the serious and deadly side effects of

10

said drug.

48.  Defendants placed said products into the stream of commerce with reckless disregard for the public safety in that it did not carry out adequate testing, did not timely or adequately continue to test and monitor the safety of the drugs, or take other reasonable steps to assure the product was efficacious for the purpose for which they were intended without subjecting the user to significant and harmful side effects as aforesaid.

49.  The defendants are strictly liable for the injuries PETER AARON LEE TAUBER sustained as a result of ingesting the product as aforesaid.

50.  That by reason of the foregoing, plaintiffs have been damaged in an amount, which exceeds the monetary jurisdictional limits of any and all lower Courts to be determined upon the trial of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
### (MISREPRESENTATION AND FAILURE TO WARN)

51.  Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs numbered "1" through "50" inclusive with the same force and effect as though more fully set forth.

52.  Beginning prior to the time PETER AARON LEE TAUBER ingested the drug VIOXX® complained of, the defendants engaged in a strategy involving aggressively marketing and selling the aforesaid product by falsely misleading potential users as to the safety of the drug and by failing to protect users from serious dangers which defendants knew or should have known to result from use of said product.

53.  By use of affirmative misrepresentations and omissions, the defendants engaged in

11

promotional or advertising programs that falsely and fraudulently sought to create the

image impression that the use of the aforesaid drug was safe or had minimal risks to

the public and the plaintiff in particular.

54.     Upon information and belief, defendants understated downplayed or withheld

information concerning health hazards and risks associated with the drugs, as well as

the lack of adequate testing and monitoring for safety.

55.     The defendants failed to provide adequate warnings and/or information concerning

the harms or potential harms of and dangers of the use of said product to the public

for whom the drugs were not expressly contraindicated, and diluted any warnings by

representing that adverse events were not significant for persons likely to be the users

of said drugs.

56.     As a direct and proximate result of the aforesaid failure by the defendants to provide

appropriate warnings and/or instructions, plaintiff sustained the harm complained of

herein.

57.     Upon information and belief, at the times relevant to this complaint, defendants were

in possession of information demonstrating serious side effects evidencing the

increased risk the drug posed to patients, or clearly should have been in possession of

such information yet continued to market the product by providing false and

misleading information with regard to safety as aforesaid.

58.     That despite the same, and despite the fact that there was existing evidence said drug

was in fact dangerous, the defendants downplayed the health hazards and risks

associated with the product and, in fact, deceived the medical community and public

at large including all potential users of the products by promoting the same as safe effective.

59.    Upon information and belief, defendants placed profit concerns over and above the safety of the public and as a result of such reckless conduct, plaintiff is entitled to exemplary damages from the defendants in addition to compensatory damages sustained as result of each of the defendants' conduct.

60.    Plaintiffs are entitled to exemplary damages from the defendants as the failure to warn was reckless and without regard to the public safety and welfare in that they misled both the medical community and the public at large including PETER AARON LEE TAUBER by misleading them about the safety of the products and downplayed or ignored serious side effects despite available information demonstrating these products were likely to cause serious and sometimes fatal side effects to the users.

61.    As a result of reckless disregard for the public welfare and welfare of PETER AARON LEE TAUBER, said plaintiffs are entitled to exemplary damages from the defendants in addition to compensatory damages sustained as a result of each of the defendants' conduct.

## AS AND FOR A FOURTH AND SEPARATE CAUSE OF ACTION (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

62.    Plaintiffs repeat, reiterate and re allege each and every allegation contained in paragraphs numbered "1" through "61" inclusive with the same force and effect as though more fully set forth.

63.    That the manufacturing defendants expressly warranted that the products were safe when used by patients for whom they were not otherwise contraindicated.

13

64.   That the manufacturing defendants breached such warranty in that said drugs are not

safe for the purpose for which they were intended.

65.   As a direct and proximate result of the aforesaid breach, plaintiff sustained the

injuries complained of herein and will continue to suffer harm in the future as set

forth herein.

## AS AND FOR A FOURTH AND SEPARATE CAUSE OF ACTION
### (VIOLATION OF NEW YORK BUSINESS CORPORATION LAW §349)

66.   Plaintiffs repeat, reiterate and re-allege each and every allegation contained in

paragraphs numbered "1" through "65" inclusive with the same force and effect as

though more fully set forth.

67.   Defendants' conduct, as noted herein, were deceptive acts or practices and involved

an extensive marketing scheme that had a broader impact on consumers at large.

68.   Defendants engaged in acts or practices that were deceptive or misleading in that the

same were likely to mislead a reasonable consumer acting reasonably under the

circumstances to ingest the products and be injured thereby.

69.   Defendants' acts and practices violated New York's Business Corporation Law §349.

70.   Plaintiff was injured as a direct and proximate result of the deceptive and misleading

acts and practices of the defendants, and is entitled to compensatory and exemplary

damages therefor.

71.   By reason of the foregoing, plaintiffs have been damaged in an amount, which

exceeds the monetary jurisdictional limits of any and all lower Courts to be

determined upon the trial of this action.

14

## AS AND FOR A SIXTH CAUSE OF ACTION
## (WRONGFUL DEATH)

72.  Plaintiffs repeat, reiterate and re-allege each and every allegation contained in
paragraphs numbered "1" through "71" inclusive with the same force and effect as
though more fully set forth.

73.  That by reason of the foregoing negligence on the part of the defendants herein,
PETER AARON LEE TAUBER was caused to meet his death on March 12, 2004,
leaving distributees surviving.

74.  By reason of the foregoing, plaintiffs' decedent's next-of-kin have suffered pecuniary
and demand judgment for damages against the defendants as a result of the wrongful
death of decedent.

WHEREFORE, plaintiffs demands judgment against the defendants in each and separate
Causes of Action in an amount exceeding the monetary jurisdictional limits of any and all lower
Courts and in amounts to be determined upon the trial of this action, together with the costs and
disbursements of this action.

Dated: July     2005                          Yours, etc.,

                                    GODOSKY & GENTILE, P.C.
                                    Attorneys for Plaintiff
                                    61 Broadway - 20th Floor
                                    New York, New York 10006
                                    (212) 742-9700
                                    V#1087

                                    By: _____
                                        Robert E. Godosky

15

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK )

I, the undersigned, am an attorney admitted to practice in the Courts of New York State, and I affirm that the foregoing statements are true under penalties of perjury:

I am the attorney of record for plaintiff herein.

I have read the annexed SUMMONS AND COMPLAINT and know the contents thereof and the same are true to my knowledge, except those matters therein, which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following: investigation, interviews with clients, records, reports, documents, correspondence, data, memoranda, etc., in the file.

This verification is submitted pursuant to the Civil Practice Law and Rules and not by plaintiff insofar as the plaintiff resides in a county outside wherein GODOSKY & GENTILE, P.C., maintain their offices.

Dated: New York, New York
       July     2005

ROBERT E. GODOSKY

16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------X

JUNE TAUBER GOLDEN, LUCY TAUBER BRYSK
and ERIC LAX as Administrators of the ESTATE OF
PETER AARON LEE TAUBER, Deceased,

                         Plaintiffs,

          -against-

LOREN MARTIN FISHMAN, M.D., MANHATTAN
PHYSICAL MEDICINE AND REHABILITATION LLP
and MERCK & CO., INC.,

                         Defendants.

-------------------------------------------------------X

Index No.:
Date Filed:

SUMMONS 05109608

Plaintiff designates
New York County as place
of trial based on
Plaintiff's residence

Plaintiffs reside at:
165 East 66th Street
New York, NY 10021

**FILED**
JUL 12 2005
NEW YORK
COUNTY CLERK'S OFF.

TO THE ABOVE NAMED DEFENDANTS:

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy

of your answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on

the plaintiff's undersigned attorney within twenty (20) days after service of this Summons, exclusive of

the day of service (or within thirty (30) days after the service is complete if this Summons is not

personally delivered to you within the State of New York); and in case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:  July 8, 2005                          Yours, etc.,

                                              GODOSKY & GENTILE, P.C.
                                              Attorneys for Plaintiffs
                                              61 Broadway - 20th Floor
                                              New York, New York 10006
                                              (212) 742-9700
                                              File # V1087

Defendants' Addresses:

Loren Martin Fishman, M.D.
3 East 83rd Street
New York, NY 10028

Manhattan Physical Medicine and Rehabilitation LLP
3 East 83rd Street
New York, NY 10028

Merck & Company, Incorporated
One Merck Drive
P.O. Box 100, WS3AB-05
Whitehouse Station, New Jersey 08889-0100

*Index No.*     *Year 20*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JUNE TAUBER GOLDEN, LUCY TAUBER BRYSK and ERIC LAX
As Administrators of the ESTATE OF PETER AARON LEE TAUBER, Dec,

Plaintiffs,

-against-

LOREN MARTIN FISHMAN, M.D., MANHATTAN PHYSICAL
MEDICINE AND REHABILITAITON LLP and MERCK & CO., INC.,

Defendants.

SUMMONS and VERIFIED COMPLAINT

LAW OFFICES
GODOSKY & GENTILE, P.C.

*Attorney for*     *Plaintiff(s)*

61 BROADWAY
NEW YORK, NEW YORK 10006
(212) 742-9700

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ...........................     *Signature* .......................................................................................

    Print Signer's Name ..........................................................................

*Service of a copy of the within*     *is hereby admitted.*

*Dated:*

.................................................
*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐   *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*     *20*
ENTRY

☐   *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.*     *one of the judges of the within named Court,*
SETTLEMENT *at*
    *on*     *20*   *, at*     *M.*

*Dated:*

LAW OFFICES
GODOSKY & GENTILE, P.C.

*Attorney for*

*Plaintiff(s)*

61 BROADWAY
NEW YORK, NEW YORK 10006
(212) 742-9700

*To:*

# Exhibit 2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                  **PLAINTIFFS**

VS.                                                       NO. 2002- *12-0236*

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a
foreign corporation; Monsanto Company;
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true
names and identities are presently unknown
or unconfirmed but will be substituted by
amendment                                                **DEFENDANTS**

**F I L E D**
JASPER COUNTY, MISS.

DEC 3 1 2002

MARK A. ISHEE
CIRCUIT CLERK

## COMPLAINT

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie

Varnado, in the above-styled and numbered cause, by and through their attorneys of

record, and file this their Complaint against the Defendants, and in support thereof

would show unto the Court the following, to-wit:

1.      This is a civil action brought on behalf of Plaintiffs who were prescribed

and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX

(Celecoxib).  Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal

problems, severe edema, and other injuries.  Plaintiff Porter used Celebrex which

caused him to suffer a stroke and other injuries.  Plaintiff Varnado used Vioxx which

caused her to suffer from heart problems, edema and other injuries.  This action seeks

damages for personal injuries and damages caused by the drugs named herein and

ingested by Plaintiffs.

2.     Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi.  Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3.     Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation.  At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4.     Defendant G. D.  Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi.  As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077.  At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pharmacia is a Delaware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:   CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.     Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation.  At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).  Defendant Monsanto is

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.     Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib).   Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent:  CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.     Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.     Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.     The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit.  Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district.  Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.    Defendant Merck did manufacture, design, package, market and distribute this drug.   This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.     Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## COUNT I

13.   Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.   The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.   Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.   The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.   Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data.  The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Varnados' injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

## COUNT II

18.   Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

herein.

19.    The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20.    Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21.    The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22.    Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT III

23.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce.  Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce.  Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.    Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein.   Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

-7-

28.     Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce.  These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29.     These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30.     Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31.     Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above.  Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT V

32.     Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## COUNT VI

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,

Celebrex.

41.    Celebrex does not conform to the express representations made through Defendants' advertising.

42.    Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.    These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

44.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.    At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Varnado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.    Plaintiffs Sumrall and Varnado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

described above.

48. Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VIII

49. Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50. At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51. Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52. Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53. These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.     Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.     Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective.  Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.     Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.   Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians.  In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.     At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

-12-

reckless disregard to their truth.   As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT X

61.      Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.      Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective.  These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.      Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.   Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians.  In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

-13-

64.     At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT XI

65.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.     Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe, #4 M.D. for various ailments and maladies.

67.     In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.     Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.     The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want or care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, both general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

**AMOS PORTER, FLORA SUMRALL, AND ANNIE LAURIE VARNADO, PLAINTIFFS**

BY _____

Attorneys for Plaintiffs

**SHANNON LAW FIRM, PLLC**
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-16-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 17 2003

J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                    PLAINTIFFS

VS.                                          CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint. Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

drugs Celebrex and Vioxx.  Plaintiffs, all Mississippi residents, named as defendants five non-resident pharmaceutical manufacturers, and also included four "John Doe" defendants, all of whom were alleged to be "Mississippi physicians whose true names and identities are presently unknown or unconfirmed." On January 10, 2003, the manufacturer defendants, who had not yet been served with process, removed the case to this court on the basis of diversity jurisdiction.  In their motion to remand, filed promptly following removal, plaintiffs contend that defendants' pre-service removal constitutes a defect in the removal procedure which necessitates remand.  Plaintiffs further urge that in the event the case is not remanded on that basis, they should be allowed to amend their complaint to identify those "Mississippi physicians" who were initially identified only as "John Doe" defendants, as a consequence of which complete diversity will be lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there was at the time of removal) jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the $75,000 threshold for jurisdiction under the diversity statute (a point which plaintiffs do not dispute); and although plaintiffs, themselves Mississippi residents, named John Doe defendants whom they represented were also Mississippi residents, the law is clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether there is complete diversity for removal purposes.  28

2

U.S.C. § 1441(a).  The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process.  The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process; it did not hold that a defendant must await service to take action.  See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23630, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "[the

_____

        In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48.

3

defendant's] notice of removal was timely"). Defendants' removal was therefore both substantively and procedurally proper. The question then becomes whether plaintiffs should now be permitted to amend their complaint, post-removal, to include as defendants those physicians who were identified as John Doe defendants in their original complaint. For the reasons that follow, the court is of the opinion that in this case, plaintiffs' request to amend should be denied.

> 28 U.S.C. § 1447(e) states:
>
> (e) If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

While the statute, by its terms, refers only to post-removal efforts by plaintiffs to "join additional defendants," the Fifth Circuit has recognized that § 1447(e) applies, as well, to the identification of fictitious defendants after removal. See Doleac ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

In Hensgens v. Deere & Company, 833 F.2d 1179 (5th Cir. 1987), the Fifth Circuit addressed the standard applicable to where a plaintiff seeks to amend to add a non-diverse defendant following removal of an action on the basis of diversity jurisdiction. The court held that in such cases, the district court "should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other

factors bearing on the equities." Id. at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily
have known and confirmed the identity of the John Doe defendants
before filing this suit, and yet did not seek to learn the
identity of the John Doe defendants, or any of them, until after
the case was removed.[3]  Given that the identity of these
defendants could have been known before suit was filed, it can
fairly be said that the post-removal attempt to join them as
defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose,
or motivation, in suing, or attempting to sue, these doctors.  It
is perhaps true in the usual case that the fact that a plaintiff
has included a defendant as a fictitious defendant in his state
court pleading would tend to belie an inference that the
plaintiff's motivation for seeking to amend post-removal to
substitute a real party for the one previously identified only as
a fictitious party is to defeat diversity jurisdiction.  See
Gilberg v. Stepan Co., 24 F. Supp. 2d 355, 356 (E.D. La. 1998)
(fact that the plaintiff was unable to effect the substitution
before the defendant removed "does not somehow convert any
subsequent effort at substitution into a joinder for the sole

---

[2]     As defendants note, this new legislation, which took
effect the day after plaintiffs' complaint was filed, placed
significant restrictions on filing lawsuits against physicians.

[3]     Perhaps they had intended to do this prior to serving
the diverse defendants, working under the mistaken impression that
the case would not be removable until at least one of the diverse
defendants was served, and were foiled in their efforts when the
diverse defendants filed their notice of removal prior to service
of process.

purpose of destroying diversity'"); <u>Davis v. American Commercial Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D. La. June 25, 1998) (substitution of real party for fictitious party named prior to removal indicates purpose of joinder is not solely to destroy diversity). Here, however, the court is persuaded that plaintiffs' motivation, not just for undertaking to now substitute these doctors as the real party defendants, but for having undertaken to sue them in the first place, was to avoid federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which are directed against the manufacturer defendants, and assert products liability based claims, and fraudulent and negligent misrepresentation by those defendants as to the safety and efficacy of the products at issue. A major theme of these counts - in fact, the major theme - is that the manufacturer defendants knew of the dangers posed by these drugs all along, and yet they withheld this information and intentionally marketed them, "both directly to the consuming public and indirectly to physicians through drugs sales representatives," as safe and effective, and at all times, before, during and after marketing the products, failed to provide adequate warnings or instructions of the defective nature of the products. The complaint alleges throughout that in addition to their marketing to the consuming public, the manufacturer defendants' sales representatives, who marketed the products to doctors, made fraudulent misrepresentations concerning the safety and efficacy of these

7

products.  As to the doctors themselves, plaintiffs' complaint
contains one count charging medical negligence in which plaintiffs
bluntly allege that these physicians prescribed these drugs to
plaintiffs, that they "knew, or should have known, of the
dangerous side effects of these medications," and that their
prescribing these medications "presents a deviation from the
standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in
the alternative, here, given plaintiffs' explicit, repeated and
consistent charge that the manufacturer defendants concealed and
misrepresented information about the subject drugs to physicians,
plaintiffs' entirely conclusory allegation that the doctors "knew,
or should have known, of dangerous side effects of these
medications," without any indication of a factual basis for such
an allegation, strongly suggests to the court that plaintiffs have
sued the physicians only as a means of avoiding federal court.
Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No.
5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the
plaintiffs' general references to knowledge possessed by
"defendants," the complaints, which alleged that the manufacturers
undertook to deceive everyone, including the pharmacist
defendants, about the safety of their drugs, could not "reasonably
and legitimately be construed as alleging any factual basis for
the conclusion that any of the pharmacy defendants had any
knowledge or reason to know of any of the dangers associated with
the product(s) of which plaintiffs contend they were unaware");

8

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN

(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any

legitimate basis for suing these defendants, if it were to turn

out that plaintiffs, in fact, do have some basis for suing them,

there is nothing to prevent them from bringing a separate action

against them in state court, and in the court's opinion,

plaintiffs will not be prejudiced if required to proceed against

the doctors separately.[*]  The court herein holds only that

plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs'

motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

UNITED STATES DISTRICT JUDGE

---

[*]     Of course, if required to proceed separately against the
doctor defendants, plaintiffs would no doubt find their claims
subject to the newly enacted medical malpractice tort reform law;
but their efforts to avoid that law in the manner they chose was
of questionable legitimacy to begin with.  Had they a genuinely
cognizable claim against the doctors, they could and should have
made every reasonable effort to properly name them at the outset,
and could and should have pled a proper claim against them.  They
did neither.

# Exhibit 3

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
# COUNTY DEPARTMENT, CHANCERY DIVISION

FILED

02 MAY -8  PH 3: 27

02CH09035

|  |  |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all ) <br> other persons similarly situated <br>  Plaintiffs. <br> vs. <br> MERCK & CO., INC. <br>  Defendant. | Civil Action No. <br><br> Amount Claimed: An amount necessary to <br> satisfy the jurisdictional requirements of this <br> court <br><br> Plaintiffs demand a jury trial |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Scott Zeedyk. on behalf of himself and all other persons similarly situated, by and through his attorney. John Xydakis. and Complains of Defendant Merck & Co.. Inc. ("Merck"), as follows:

### A. PARTIES AND VENUE

1. Plaintiff. by his attorney, brings this Class Action Complaint on his own behalf and on behalf of all others similarly situated to, *inter alia*, obtain compensatory damages, refunds, disgorgement and the establishment of a medical monitoring program for diagnosis and treatment of the potentially life threatening side effects and diseases caused by the taking of the drug marketed under the brand name "Vioxx" by Defendant Merck.

2. Plaintiff is a resident and citizen of Stickney, Cook County. Illinois.  Plaintiff was prescribed and consumed Vioxx during the relevant time period for acute pain management.  Plaintiff was unaware of the serious risks associated with the taking of Vioxx.

3. Defendant Merck is a New Jersey corporation having its principal place of business in New York. New York.

4. The court has jurisdiction over the Defendant and the matters herein pursuant to 735 ILCS 5/2-209 as Defendant Merck transacts business within the State Of Illinois on a

regular and continuous basis and has made and performed contracts by the sale of Vioxx and other pharmaceutical products within the State of Illinois.

## B. CLASS OF PERSONS

5. Plaintiff brings this litigation as a class action pursuant to 735 ILCS 5/2-801 to certify a Plaintiff class. Plaintiff brings this action on his own behalf and on behalf of the following Class: all persons in the United States, including their successors in interest, who have ingested Vioxx for approved uses and in approved doses and for unapproved uses and unapproved doses.

6. Excluded from the Class are Defendant and its officers and directors.

7. Numerosity: The Class is so numerous that joinder of all members is impracticable. Thousands of persons, throughout the United States, were and/or are prescribed Vioxx.

8. Typicality: The claims of the representative Plaintiff are typical of the claims of each member of the Class. Plaintiff and all other members of the Class have used and/or continue to use Vioxx. Plaintiff has no interests antagonistic to the claims of the Class.

9. Adequacy of representation: Plaintiff will fairly and adequately protect and pursue the interests of the members of the Class. Plaintiff understands the nature of the claims herein and his role in these proceedings, and will vigorously represent the interests of the Class. Plaintiff's counsel has experience in consumer class cases and is qualified to pursue this litigation for the Class.

10. The class action is maintainable: This action is appropriate for class status because:

    (a) the prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

    (b) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole; and

  (c) questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The size of the expected recovery for an individual Class member is not expected to be substantial enough for any one Class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

11. <u>Commonality</u>: There are issues of fact and law common to the Class, and these questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to, the following:

  (a) whether Defendant has failed to adequately warn of the serious cardiovascular risks and other serious risks associated with the ingestion of Vioxx;

  (b) whether an emergency notice and revised patient insert warning of the hazards associated with Vioxx should be disseminated to Class members;

  (c) whether the Defendant negligently designed, manufactured, warned, marketed and advertised Vioxx;

  (d) whether Defendant adequately and appropriately tested Vioxx;

  (e) whether patients who have taken Vioxx are entitled to monetary relief;

  (f) whether the omissions, misrepresentations or false statements were made intentionally, willfully, wantonly, recklessly, or negligently;

  (g) whether Defendant owed a duty to the Class members, what is the scope of any duty, and was the duty breached;

  (h) whether the Class members have been damaged and, if so, what is the proper measure of damages;

  (i) whether Vioxx causes injury to its users;

  (j) whether Merck is strictly liable for sales and distribution of a dangerously defective product;

(k)     whether Merck negligently designed, manufactured, warned about, distributed and marketed Vioxx; and

(l)     whether the serious side effects, injuries and damages from the use of Vioxx support the need for medical monitoring of persons who have used the drug.

## C. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.   At all relevant times hereto, Defendant Merck did or caused Vioxx to be manufactured, designed, tested, packaged, supplied, marketed, advertised and sold in the United States.

13.   Vioxx is a non-steroidal anti-inflammatory drug ("NSAID") with a COX-2 inhibitor, which was approved on May 20, 1999, for the treatment of primary dysmenorrhea (menstrual cramps), for acute pain management in adults and for relief of osteoarthritis. Vioxx reportedly reduces pain and inflammation while also significantly reducing incidents of stomach ulcers commonly associated with pain relievers such as aspirin and ibuprofen.

14.   Traditional NSAIDs such as ibuprofen and aspirin block both COX-2 and COX-1 enzymes. Because the COX-1 enzyme protects the lining of the stomach, blocking it can lead to stomach irritation. It is believed that COX-2 inhibitors reduce the incidence of stomach ulcers and bleeding because they do not block COX-1 enzymes.

15.   There are over 86 million users of Vioxx nationwide. Annual sales exceed $2.5 billion for Vioxx in the United States.

16.   The Vioxx Gastrointestinal Outcome Research Study (hereinafter "VIGOR"), sponsored by Merck, was designed to gather information regarding "clinically meaningful upper gastrointestinal ("GI") events and to develop a large controlled database for overall safety assessment."

17.   The VIGOR study included about 8000 patients, 4000 for the Vioxx 50 mg a day treatment group and 4000 for the naproxen 1000 mg a day treatment group, for a median time period of nine months. (Naproxen is an NSAID, sold under such brand names as Naprosyn and Aleve). The study compared the safety of the two patient groups. The results of the study concerning GI events demonstrated that the group on Vioxx has a

significantly lower incidence of GI events, 2.08% compared to Naproxen 4.49%. (GI events include perforations, symptomatic ulcers, and gastrointestinal bleeds).

18. The VIGOR study also found that serious cardiovascular events occurred in 101 patients (2.5%) in the Vioxx group compared to 46 (1.1%) in the Naproxen group. In addition, myocardial infarctions (heart attacks) occurred in 20 patients in the Vioxx group (0.5%) compared to 4 patients in the Naproxen group (0.1%).

19. According to the Department of Health and Human Services ("HHS"), Defendant Merck engaged in a campaign that minimized the serious cardiovascular findings observed in the VIGOR study. The VIGOR study observed patients on Vioxx with a four to five times increase in myocardial infarctions, compared to patients on the NSAID - Naprosyn (naproxen).

20. HHS also cited Defendant Merck for engaging in a promotional campaign that minimized the Vioxx/Coumadin (warfarin) drug interaction, (warfarin is an anticoagulant and the mixing of Vioxx and Coumadin can lead to the potentially serious risk of bleeding), making unsubstantiated superiority claims against other NSAIDs, and promoting Vioxx for unapproved uses and dosing regimens. HHS found Defendant Merck's misrepresentations particularly troubling because of HHS's previous objections to Defendant Merck's misrepresentations.

21. According to HHS, Merck's press release of May 20, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," which stated that Vioxx has a "favorable cardiovascular profile" was "simply incomprehensible, given the rate of GI and serious cardiovascular events compared to Naproxen." HHS concluded that Defendant Merck minimized the potentially serious cardiovascular findings of the VIGOR study and minimized the Vioxx/Coumadin drug interaction.

22. After carefully reviewing the results of the VIGOR study, the U.S. Food and Drug Administration ("FDA") agreed with the Arthritis Advisory Committee recommendations of February 8, 2001 that the label for Vioxx should include the gastrointestinal and cardiovascular information. Hence, on April 11, 2002, the FDA approved new indication and label changes for Vioxx which included this information.

## D. CAUSES OF ACTION

### COUNT I -(Strict Products Liability)

23.  Plaintiff alleges and incorporates paragraphs 1 through 22 as if set forth fully above.

24.  Defendant Merck is the manufacturer and/or supplier of Vioxx.

25.  Defendant Merck manufactured and/or supplied Vioxx, which was defective and hazardous in design and formulation in that, when left in the hands of Merck, the foreseeable risks exceeded the benefits associated with the design or formulation.

26.  Alternatively, Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous in design or formulation, in that, when it left the hands of Merck, it was unreasonably dangerous, more dangerous that an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

27.  The Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous due to inadequate warning or instruction because Merck knew or should have known that Vioxx posed a greater risk to patients taking it than to those patients taking other NSAIDs.

28.  As the procuring cause and legal result of the defective and hazardous condition of Vioxx as manufactured and/or supplied by Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

29.  Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such tests would have demonstrated that when compared to other NSAIDs, patients taking Vioxx had increased risk of cardiovascular events and adverse drug interactions with Coumadin.

30.  Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should

have known that Vioxx increased the risk of cardiovascular events and adverse drug interactions with Coumadin, when compared to other NSAIDs.

31.  As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses, and require updated warnings and emergency notice.  Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II – (Strict Products Liability - Failure to Warn)

32.  Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

33.  Defendant Merck is the manufacturer and/or supplier of Vioxx.

34.  Defendant Merck failed to adequately and fully warn of the higher risk of cardiovascular events, of Vioxx/Coumadin interaction, and of unapproved use, when compared to other NSAIDs.

35.  Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce.  Such test would have demonstrated that patients taking Vioxx had increased risk of cardiovascular event and adverse drug interaction with Coumadin, when compared to other NSAIDs.

36.  Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction.  Defendant Merck knew or should have known that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

37.  As the producing cause and legal result of the defective or hazardous condition of Vioxx, as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services, and did incur medical, health, incidental and related expenses,

and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT III - (Negligence)

38. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

39. Defendant Merck has had a duty to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx, including a duty to ensure that Vioxx did not cause users to suffer from unreasonable and dangerous side effects.

40. Defendant Merck breached its duty to Plaintiff and members of the Class, to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx in that Defendant Merck knew or should have known that Vioxx created an unreasonably high risk of dangerous side effects, including an unreasonably high risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

41. Defendant Merck was negligent in the manufacture, sale, testing, distribution, marketing and warning of Vioxx in that it:

    (a) failed to issue reasonable and proper warnings regarding all possible adverse effects associated with the use of Vioxx;

    (b) failed to conduct adequate pre-clinical testing, clinical testing and post-marketing oversight and surveillance to determine the effect of Vioxx;

    (c) failed to provide adequate instruction to health care providers for appropriate risks and uses of Vioxx;

    (d) failed to warn Plaintiff and the Class, prior to encouraging the use of Vioxx, that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs;

    (e) failed to use reasonable care in the design and manufacturing of Vioxx to avoid and prevent the increased risk of cardiovascular events and adverse drug

---

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY   8

interaction with Coumadin, when compared to other NSAIDs; and

(f) was otherwise careless or negligent.

42. Defendant Merck knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendant Merck's failure to exercise ordinary care as set forth above.

43. As the proximate cause of Defendant Merck's negligence, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other forms of economic loss.

### COUNT IV - (Breach of Express Warranty)

44. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

45. Defendant Merck expressly warranted that Vioxx was safe for use by Plaintiff and the Class for the treatment of conditions for which Vioxx was advertised.

46. Vioxx does not conform to Defendant Merck's express representations because Vioxx does not warn of increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

47. As a direct and proximate result of Defendant Merck's breach of express warranty, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.

### COUNT V - (Breach of Implied Warranty)

48. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

49. At the time Defendant Merck manufactured, sold, distributed, and marketed Vioxx, Defendant Merck knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

50. Plaintiff and the Class and their health care providers reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality.

safe and fit for its intended use.

51. However, despite this implied warranty, Vioxx was not of merchantable quality, safe or fit for its intended use because Vioxx was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used.

52. As a direct and proximate result of Defendant Merck's breach of implied warranty of merchantability, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other economic loss.

## COUNT VI - (Medical Monitoring)

53. Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

54. As a direct and proximate result of Defendant Merck's conduct as set forth herein, Plaintiff and members of the Class have been exposed to an unreasonably increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

55. The increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs, can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that:

    (a) notifies individuals who used Vioxx of the potential harm from Vioxx;

    (b) funds further studies of the long-term effects of Vioxx use;

    (c) funds research into possible cures for the detrimental effects of Vioxx use;

    (d) gathers and forwards to treating health care providers information related to the diagnosis and treatment of injuries and diseases that may result from using Vioxx; and

    (e) aids in the early diagnosis and treatment of resulting injuries and diseases through ongoing testing and monitoring of Vioxx users.

56. Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone cannot adequately compensate for the continuing nature of the harm to them, and a monitoring program that notifies them of possible injury and aids in their

diagnosis and treatment can prevent the greater harms that may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur and worsen.

57.   Without a court approved and supervised medical monitoring program, Vioxx users will not receive prompt medical care.

## COUNT VII - (Consumer Fraud)

58.   Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

59.   At all times relevant hereto and to date there was in force a statute in the State of Illinois 815 ILCS 505 *et seq.*, commonly known as the "Consumer Fraud and Deceptive Practices Act ("Act")," the scope of which covers all of the relevant acts, conduct, practices and transactions noted above and herein.

60.   The Plaintiff and members of the Class are consumers, as defined by the Act, of Defendant Merck's product, Vioxx.

61.   The acts, practices and conduct of Defendant Merck involved trade practices addressed to the market generally and/or otherwise implicate consumer protection concerns.

62.   By one or more of the following acts, practices and conduct noted above in Paragraphs 12-22, directly or by implication, Defendant Merck violated said Act and damaged the Plaintiffs and members of the Class by engaging in unfair and/or deceptive acts or practices, and/or engaging in conduct which creates a likelihood of confusion or misunderstanding, in the conduct of their trade or commerce.

63.   That Defendant Merck intended that the Plaintiff and members of the Class rely on its above-mentioned unfair and/or deceptive acts, practices and conduct.

64.   That Defendant Merck's acts, practices and conduct were done knowingly, intentionally, willfully, recklessly, with actual malice, and with a wanton disregard of the rights of the Plaintiff and members of the Class, an especially vulnerable group who are suffering from medical ailments and who are not as educated about pharmaceutical drugs as the Defendant Merck is, and as such the Plaintiff and members of the Class are entitled to

punitive, or exemplary, damages.

65. As a result of said unfair and/or deceptive acts, practices and conduct by Defendant Merck, and the Plaintiff's and members of the Class' justifiable and reasonable reliance thereupon, the Plaintiff and members of the Class have been damaged.

66. Should they prevail, the Plaintiff and members of the Class are entitled to reasonable attorney's fees and costs from Defendant Merck in an amount necessary to compensate the Plaintiff and members of the Class for the costs and disbursements of this action pursuant to 815 ILCS 505 *et seq.*.

## E. PRAYER FOR RELIEF

WHEREFORE, for each and/or any of the above-mentioned Counts, Plaintiff prays for the following relief:

A. an order certifying the Class as set forth herein, with the named Plaintiff as class representative and his counsel as class counsel;

B. a declaration that Defendant Merck's conduct violated the law as alleged in each cause of action;

C. a judgment for Plaintiff and the Class for compensatory damages sustained as a result of Defendant Merck's unlawful conduct, including medical, hospital and incidental expenses according to proof;

D. an order creating a comprehensive court supervised medical monitoring program as described herein which will notify users of Vioxx of the increased risks of cardiovascular event and adverse drug interaction with Coumadin, when compared to other NSAIDs, the costs of which are to be borne by Defendant Merck;

E. an order creating a court-supervised trust fund, funded by Defendant Merck, to pay for a medical monitoring program, including testing, screening and monitoring of potential adverse and harmful effects caused by the consumption of Vioxx;

F. an order requiring Defendant Merck to provide Plaintiff and the Class, and health

care providers with revised drug warnings, in substantially the same form and same delivery method as the original warnings were issued;

G.  an order requiring Defendant Merck to refund and make restitution of all monies obtained from the sale of Vioxx to the Plaintiff and the Class;

H.  an order awarding Plaintiff and the Class attorneys' fees, costs and expenses against Defendant Merck as allowed by law;

I.  an order against Defendant Merck awarding Plaintiff and the Class an amount necessary to compensate the Plaintiff and the Class for the costs and disbursements of this action, including reasonable attorney's fees, pursuant to 815 ILCS 505 *et seq*;

J.  pursuant to 815 ILCS 505 *et seq.*, an order against Defendant Merck awarding Plaintiff and the Class punitive, or exemplary, money damages found to be suitable and sufficient to deter similar acts by Defendant Merck in the future and to punish Defendant Merck for its previous acts; and

K.  such other or further relief as the Court may hold appropriate.


Respectfully submitted,
SCOTT ZEEDYK on behalf of himself
and all other persons similarly situated


BY: _____
John Xydakis, Attorney for Plaintiffs


John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all ) | Civil Action No. |
| other persons similarly situated ) | |
| Plaintiffs. ) | Amount Claimed: An amount necessary to |
| ) | satisfy the jurisdictional requirements of this |
| vs. ) | court |
| ) | |
| MERCK & CO., INC. ) | Plaintiffs demand a jury trial |
| Defendant. ) | |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth below are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verily believes the same to be true.

    1.   The total money damages sought in the above-captioned case exceeds fifty thousand dollars ($50,000).

FURTHER AFFIANT SAYETH NAUGHT.


John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4203 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Scott Zeedyk, on behalf of himself and all other persons similarly situated vs. Merck & Co., Inc. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiff's Motion to Remand back to Circuit Court of Cook County for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due ____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on ____ set for ____ at __ ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on __ ___ set for __ ___ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ____ at _____.

(7) ☐ Trial[set for/re-set for] on ____ at ___ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at __ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the reverse side of this minute order, Zeedyk's motion to remand for lack of subject matter jurisdiction is DENIED [7-1].

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 0 3 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 10 |
| X | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| klb (lc) | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)

## ORDER

Before this Court is the motion of plaintiff, Scott Zeedyk, to strike or deny defendant's notice of removal. Plaintiff is a citizen of Illinois. Defendant, Merck, is a citizen of New Jersey. This case involves failure to warn claims and allegations that VIOXX, a prescription medicine manufactured by Merck, caused plaintiff, Zeedyk, to sustain life-threatening injuries.

On May 8, 2002, plaintiff filed his original complaint against the defendant in the Circuit Court of Cook County. On May 20, 2002, the defendant was served with service of process. On this date as well, plaintiff was granted leave of court by the Circuit Court to file an amended complaint instanter. On May 29, 2002, this amended complaint was served on the defendant. Pursuant to 28 U.S.C. § 1332, the defendant filed its first notice of removal, on June 12, 2002, based on its receipt of the original complaint, and on its subsequent receipt of the amended complaint, filed an amended notice of removal on June 25, 2002.

Plaintiff moves to remand because it alleges that Merck failed to conform to Local Rule 81.2. This rule requires that the notice of removal be accompanied by a statement of good faith that the jurisdictional limit is met and by either a response by plaintiff to a request to admit or a response to an interrogatory stating that the jurisdictional limit is met or proof of the failure to respond to such a request to admit or interrogatory. Merck did not provide any such responses with its notice of removal. Defendant argues that where, as here, the complaint clearly establishes that the amount in controversy is in excess of the jurisdictional minimum, the defendant need not establish satisfaction of the jurisdictional minimum through the procedure outlined in Local Rule 81.2.

This Court has previously explained that Local Rule 81.2 is "not the exclusive way in which the jurisdiction amount could be established in a case removed from an Illinois court." Murphy v. Avon Products, Inc., No. 02-C-146, 2002 WL 808386 (N.D. Ill. April 30, 2002); Huntsman v. Whitehouse, No. 97-C-3842, 1997 WL 548043 (N.D. Ill. Sept. 2, 1997). Zeedyk seeks, inter alia, compensatory and punitive damages for Merck's alleged knowing, intentional, willful, reckless, and malicious failure to warn. Plaintiffs seeking similar relief against other pharmaceutical manufacturer defendants and making similar allegations of failure to warn received jury awards well in excess of $75,000. See, e.g., Proctor v. Upjohn, 291 Ill.App.3d 265, 286-87 (Ill. App. 1997) (plaintiff received approximately $3 million in compensatory damages and $6 million in punitive damages for failure to warn claim); Batteast v. Wyeth Labs, Inc., 172 Ill. App.3d 114 (Ill. App. 1988) (upholding jury's award of approximately $9 million in compensatory damages and $13 million in punitive damages). Plaintiff attempted to defeat jurisdiction in this court by specifically pleading in the amended complaint that he was waiving his right to damages in excess of $75,000. However, this is impermissible under Illinois pleading rules, which forbid a plaintiff in a personal injury action from pleading in its complaint any amount of damages other than "the minimum necessary to comply with the circuit rules of assignment where the claim is filed." 735 Ill. Comp. Stat. Ann. § 5/2-604 (West 2002); In re Shell Oil Col., 970 F.2d 355, 356 (7th Cir. 1992). Thus, it is reasonably probable that the amount in controversy exceeds $75,000 where similar claims recovered damages well over that amount.

For the foregoing reasons, plaintiff's motion to remand for lack of subject matter jurisdiction is DENIED.